UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------

1934 BEDFORD LLC and NIKOL VON LAVRINOFF,

                Appellants,

v.

LOEB & LOEB, LLP,

                Appellee.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
21-CV-1405 (MKB)

MARGO K. BRODIE, United States District Judge:

    Appellants 1934 Bedford LLC and Nikol Von Lavrinoff commenced this appeal on March 17, 2021, arising from a bankruptcy proceeding in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101 *et seq*. (Notice of Appeal, Docket Entry No. 1.) On August 2, 2019, creditors filed an involuntary Chapter 11 bankruptcy petition (the "Petition"), against Appellant 1934 Bedford LLC ("1934 Bedford"). (Bankruptcy Ct. Docket Entry No. 1, Docket Entry No. 1-1; Notice of Bankruptcy R. Received ("R.") 11, Docket Entry No. 4.) Appellants retained Loeb & Loeb LLP ("Appellee") as substitute counsel. (Bankruptcy Ct. Docket Entry Nos. 190, 252.) On September 28, 2020, a final decree was granted and the Chapter 11 case was closed. (R. 678–79.)

    On December 1, 2020, in a dispute regarding the post-effective date attorneys' fees and the release of the remaining funds in Appellee's attorney escrow account (the "Escrow"), Appellee moved the Bankruptcy Court to reopen the case and permit the Escrow funds to be disbursed for payment of professional fees and expenses (the "December 2020 Motion") in the

amount of $133,888.59, before later requesting a total of $143,145.10.  (Bankruptcy Ct. Docket Entry No. 336; R. 680–90; Appellants' App. 399–400, Docket Entry No. 5-1.)  On January 8, 2021, the Bankruptcy Court entered an order reopening the case "only for the purposes of directing [Appellee], as Escrow [a]gent, to disburse" funds from the Escrow to an accountant who had performed services for the Appellants and ordering the parties to confer regarding the fees owed to Appellee (the "January 2021 Order").  (Bankruptcy Ct. Docket Entry No. 349.)  On March 12, 2021, the Bankruptcy Court partially granted Appellee's December 2020 Motion, directing the transfer of all funds from the Escrow and ordering fees and expenses in a reduced amount of $93,384.10 (the "March 2021 Order"), and closed the case.  (Appellants' App. 416–17.)  Appellants appeal the Bankruptcy Court's decisions and challenge (1) the jurisdiction of the Bankruptcy Court to reopen the bankruptcy case and (2) the fee award to Appellee; Appellee requests that the Court affirm the decisions of the Bankruptcy Court.[1]

For the reasons set forth below, the Court affirms the Bankruptcy Court's orders.

I. **Background**

    a. **Initial proceedings**

On August 2, 2019, certain purported creditors filed an involuntary petition for relief against 1934 Bedford under Chapter 11.  (R. 73, 98.)  The Bankruptcy Court entered an order for relief on October 1, 2019.  (R. 11.)  1934 Bedford was originally represented by Wayne Greenwald, PC, and subsequently by the Law Office of Rachel S. Blumenfeld PLLC.  (R. 73.)  Progress in the case was "stalled due to the ongoing and protracted disagreements" between 1934

---

[1] (Appellants' Br., Docket Entry No. 5; Appellants' App., Docket Entry No. 5-1; Appellee's Br., Docket Entry No. 10; Appellee's App., Docket Entry No. 10-1; Appellants' Reply Br. ("Appellants' Reply"), Docket Entry No. 11.)

Bedford and the secured mortgage lender, 1930 Bedford Avenue, LLC (the "Mortgagee"). (R. 464.)

### b. Appointment of Appellee as counsel

On June 11, 2020, 1934 Bedford, through Von Lavrinoff, its "sole interest holder and managing member," (Appellee's Br. 2), submitted an application for entry of an order authorizing the retention of Appellee as substitute counsel nunc pro tunc to May 20, 2020. (R. 72–79.)  1934 Bedford anticipated that Appellee would advise it with respect to its duties and powers, advise and consult on the conduct of the Chapter 11 case, prepare pleadings, advise it in connection with any potential financing, sale of assets, or investment by a third party, and advise it regarding tax matters, among other roles.  (R. 75.)  1934 Bedford informed the Bankruptcy Court that Appellee would bill at its customary hourly rates, "which, with respect to the professionals expected to work on this matter currently are: $675–$1,200 for partners, $485–$770 for associates, and $260–$440 for paralegals."  (R. 76.)  1934 Bedford believed that Appellee's hourly rates and terms of engagement were "appropriate, fair and reasonable." (R. 76.)  The Bankruptcy Court approved the application, permitting Appellee to be retained as counsel (the "Agreement").  (Bankruptcy Ct. Docket Entry Nos. 190, 252.)

### c. The plan and confirmation order

On June 24, 2020, the Bankruptcy Court conducted a contested hearing, (R. 467), and on June 26, 2020, the Bankruptcy Court entered an order (the "Confirmation Order") approving the bankruptcy plan (the "Plan"), (R. 206–28).  The Plan called for the sale of 1934 Bedford's real property (the "Property") for a gross purchase price and provided that at the closing of the sale of the Property, Appellee would escrow and hold: (1) money for unpaid default interest; (2) estimated Mortgagee legal fees through June 26, 2020; (3) a legal fee reserve for future litigation

by 1934 Bedford or successors against the Mortgagee; (4) a legal fee reserve for 1934 Bedford's objections to the Mortgagee's claim; and (5) an interest reserve through July 13, 2020. (R. 132.) "Absent a stay," Appellee would be required to "release any of such funds upon an order of the [Bankruptcy] Court directing such funds' release." (R. 133.) "[1934 Bedford's] and Mortgagee's rights to seek modification of the amounts held in escrow [were] reserved." (*Id.*) The Plan also provided that 1934 Bedford would hold the "disputed portion of the distribution that would be due on account of any [d]isputed [c]laim" in escrow. (R. 145.)

> Under the Plan, the Bankruptcy Court retained jurisdiction:
>
>> over all matters arising under, arising in, or relating to [1934 Bedford's] [b]ankruptcy [c]ase including, but not limited to, proceedings: (a) to consider any modification of the Plan under section 1127 of the Bankruptcy Code; (b) to hear and determine all [c]laims, controversies, suits and disputes against [1934 Bedford] to the full extent permitted under 18 U.S.C. §1334 and 28 U.S.C. §157; (c) to hear, determine and enforce all [c]laims and causes of action which may exist on behalf of [1934 Bedford] or [1934 Bedford's] estate, including, but not limited to, any right of [1934 Bedford] or [1934 Bedford's] [e]state to recover assets pursuant to the provisions of the Bankruptcy Code (provided, however, that the jurisdiction of the Court is expressly not exclusive in this respect); (d) to hear and determine all requests for compensation and/or reimbursement of expenses which may be made; (e) to value assets of the [e]state; (f) to enforce the Confirmation Order, the final decree, and all injunctions therein; (g) to enter an order concluding and terminating the [b]ankruptcy [c]ase; (h) to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order; (i) to determine all questions and disputes regarding title to the assets of [1934 Bedford]; (j) to re-examine [c]laims which may have been allowed for purposes of voting, and (k) to determine objections which may be filed to any [c]laims or [l]iens.

(R. 144–45.) The Plan's effective date was June 29, 2020. (R. 277–78.) The Plan further provided that following distribution to various creditors, including Von Lavrinoff, "the remaining proceeds from the sale [of the Property] were [to be] deposited into the Escrow." (Appellee's Br. 6.)

4

### d. Appellee's fee application and December 2020 Motion

On July 20, 2020, Appellee filed its first and final fee application for allowance of fees and reimbursement of expenses in the aggregate amount of $438,570.71 — $432,068.00 for fees, and $6,502.71 for expenses — for the period of May 20, 2020 through and including June 29, 2020. (R. 459–83.) Appellee listed the actions for which it represented 1934 Bedford, including filing a competing plan, on May 27, 2020, (R. 465); advancing the closing date of the Property by two weeks, (R. 465); defending against the Mortgagee's trustee and claim estimation motions, (R. 467); assisting 1934 Bedford in preparing and filing amended monthly operating reports, (R. 468); preparing for and appearing at several hearings, (R. 468); working with 1934 Bedford to determine "the [o]bjectionable [c]laims and [l]iens," (R. 469); and preparing retention applications for the 1934 Bedford's other professionals, including special litigation counsel, (R. 469). Appellee included a summary of hours, itemized by attorney, (R. 491), more than thirty pages of billable time entries, (R. 493–527), and descriptions of disbursements and expenses, (R. 528–29, 532).

At a September 9, 2020 hearing, the Bankruptcy Court noted that Appellee "charges at a very high rate," which the Bankruptcy Court assumed to have been disclosed in its retention application, an assumption that Appellee confirmed. (Appellants' App. 144.) The Bankruptcy Court also determined that certain amounts charged were "over the top" and "excessive," (Appellants' App. 145), and accordingly found that a $100,000 deduction from the attorneys' fees was appropriate, (*id.* at 161, 163). The Bankruptcy Court also ordered Appellee to pay outstanding United States Trustee fees and other professional fees on behalf of 1934 Bedford. (*Id.* at 163–64.) On September 28, 2020, the Bankruptcy Court granted a final decree and closed the Chapter 11 case. (R. 678–79.)

On December 1, 2020, Appellee filed the December 2020 Motion, moving the Bankruptcy Court to reopen the case and permit Escrow funds to be disbursed for payment of post-effective date professional fees and expenses to (1) 1934 Bedford's accountant in the amount of $4,622.50, and (2) Appellee, towards partial payment of invoices for post-effective date fees and expenses in the amount of $133,888.59.  (R. 680–90.)  On December 14, 2020, Appellants opposed the December 2020 Motion.  (Bankruptcy Ct. Docket Entry No. 341; Appellants' App. 110–20.)  Appellee submitted a reply in further support on December 18, 2020, (Bankruptcy Ct. Docket Entry No. 342; R. 739–51).

At a December 22, 2020 hearing, the Bankruptcy Court attempted to "set up a process to limit the dispute and to narrow the scope of the fees that [were] at issue," (the "December 2020 Hearing").  (Appellants' App. 291; Bankruptcy Ct. Docket Entry No. 344.)  The Bankruptcy Court ordered the parties to "operate under the assumption" that no fees would be awarded related to litigating the fee application and that the Bankruptcy Court would not "reset the hourly fees for any of [Appellee's] employees."  (Appellants' App. 291.)  The Bankruptcy Court also determined that it had the authority to reopen the case because "[t]here [was] clearly a dispute as to how to close out this [E]scrow," and therefore exercising the Bankruptcy Court's discretion was warranted.  (*Id.* at 284.)  The Bankruptcy Court ordered the parties to meet and confer regarding the disputed fees.  (*Id.* at 292.)

### e.  Bankruptcy Court orders

On January 8, 2021, the Bankruptcy Court entered the preliminary January 2021 Order, which granted Appellee's December 2020 Motion in part, ordered Appellee to disburse $4,622.50 to Appellants' accountant, and directed the parties to meet and confer over the disputed entries and file a statement of remaining disputes.  (Appellants' App. 295–97.)

Appellants submitted a supplemental opposition on February 15, 2021, (Appellants' App. 298–332), and Appellee submitted a supplemental reply on February 21, 2021, (R. 757–61.)

At a hearing on February 24, 2021 (the "February 2021 Hearing"), Appellee requested $139,571.00 in attorneys' fees and $3,574.10 in expenses, for a total of $143,145.10. (Appellants' App. 400.) The Bankruptcy Court stated that it "went through [Appellee's] very detailed chart where each time entry is defended," reviewed "the pleadings and . . . made certain reductions to the fees requests and expenses requested," including a concession from Appellee, and noted entries that it thought were "duplicative" or not "prudent." (*Id.* at 399–401.) The Bankruptcy Court also reduced Appellee's fees for "time related to the defense of the fee application." (*Id.* at 402, 404.)

The Bankruptcy Court entered the March 2021 Order, incorporating the January 2021 Order, granting the December 2020 Motion, directing the transfer of all funds from the Escrow, and permitting Appellee to recover post-effective fees and expenses but reducing the amount from the requested amount of $143,145.10 to $93,384.10. (Order dated Mar. 12, 2021, Bankruptcy Ct. Docket Entry No. 356.) On March 12, 2021, the Bankruptcy Court closed the case. (*Id.*; Appellants' App. 413–17.)

## II. Discussion

### a. Standard of review

District courts have appellate jurisdiction over "final judgments, orders, and decrees" entered in bankruptcy court. 28 U.S.C. § 158(a). On appeal, a district court may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. *See In re XO Commc'ns, Inc.*, 308 F. App'x 459, 460–61 (2d Cir. 2008) ("Accordingly, the case is remanded to the [d]istrict [c]ourt with directions to remand to the

[b]ankruptcy [c]ourt for further proceedings consistent with this opinion."); *Applebaum v. Southworth*, No. 21-CV-729, 2021 WL 5997198, at *1 n.1 (N.D.N.Y. Dec. 20, 2021) ("Although Fed. R. Bankr. P. 8013 was amended in 2014 and no longer explicitly states, *inter alia*, that a district court 'may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree,' 'logic still compels the same conclusion with respect to the appellate powers of the [d]istrict [c]ourt.'" (first quoting former Fed. R. Bankr. P. 8013; and then quoting *In re Great Atlantic & Pacific Tea Co., Inc.*, No. 14-CV-4170, 2015 WL 6395967, at *2 n.1 (S.D.N.Y. Oct. 21, 2015))); *Itria Ventures, LLC v. O'Keefe*, --- B.R. ---, ---, 2021 WL 4477088, at *2 (N.D.N.Y. Sept. 30, 2021) (quoting *Acee v. Oneida Savings Bank*, 529 B.R. 494, 496–97 (N.D.N.Y. 2015)).

"A district court reviews a bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. A bankruptcy court's discretionary decisions are reviewed for abuse of discretion." *In re Aramid Ent. Fund Ltd.*, No. 21-CV-4840, 2022 WL 118293, at *5 (S.D.N.Y. Jan. 12, 2022) (citations omitted); *see In re Pinnock*, 833 F. App'x 498, 501 (2d Cir. 2020) (engaging in *de novo* review of the district court's review of a bankruptcy court decision and noting that the Second Circuit "appl[ies] the same standard of review employed by the district court to the decision of the bankruptcy court" (quoting *Anderson v. Credit One Bank, N.A.* (*In re Anderson*), 884 F.3d 382, 387 (2d Cir. 2018))). A finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Johns-Manville Corp.*, 802 F. App'x 20, 23 (2d Cir. 2020) (quoting *In re CBI Holding Co., Inc.*, 529 F.3d 432, 449 (2d Cir. 2008)); *see Glassman v. Feldman*, No. 19-CV-5002, 2020 WL 6119270, at *4 (E.D.N.Y. Oct. 16, 2020) (same) (quoting *Bongiovanni v. Grubin*, No. 15-CV-2617, 2016 WL 4059349, at *3 (E.D.N.Y. July 28, 2016)). Discretionary rulings of a bankruptcy court are reviewed for abuse of discretion. *See Sterling v. 1279 St.*

*John's Place, LLC (In re Sterling)*, 737 F. App'x 52, 53 (2d Cir. 2018); *In re Fletcher Int'l, Ltd.*, 536 B.R. 551, 558 (S.D.N.Y. 2015) ("The [b]ankruptcy [c]ourt's decision[] . . . approving payment of professionals' fees . . . will be reviewed for abuse of discretion."); *see also Bernheim v. Damon & Morey, LLP*, No. 06-BK-3386, 2007 WL 1858292, at *1 (2d Cir. June 28, 2007) ("Bankruptcy courts enjoy wide discretion in determining reasonable fee awards, which discretion will not be disturbed by an appellate court absent a showing that it was abused." (quoting *In re JLM, Inc.*, 210 B.R. 19, 23 (B.A.P. 2d Cir. 1997))). "An abuse of discretion arises where (1) the bankruptcy judge fails to apply the proper legal standard or follows improper procedures in determining the fee award, or (2) bases an award on findings of fact that are clearly erroneous." *Bernheim*, 2007 WL 1858292, at *1 (quoting *In re JLM, Inc.*, 210 B.R. at 23); *see also In re Gravel*, 6 F.4th 503, 511 (2d Cir. 2021) ("A bankruptcy court 'necessarily abuses its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" (quoting *In re Kalikow*, 602 F.3d 82, 91 (2d Cir. 2010))); *In re DeGroof*, No. 07-CV-525, 2008 WL 4560088, at *3 (E.D.N.Y. Sept. 29, 2008) (quoting *Bernheim*, 2007 WL 1858292, at *1); *Matter of Cena's Fine Furniture*, 109 B.R. 575, 580 (E.D.N.Y. 1990) ("The standard of review on appeal of a fee award from a bankruptcy court is that the decision of the bankruptcy judge will be affirmed unless the bankruptcy judge has abused his discretion — i.e., failed to apply proper procedures or legal standards, or made factual findings that were clearly erroneous.").

The district court need not limit its review to the arguments raised or relied upon in the decision below but may affirm on any ground that finds support in the record. *See Wenegieme v. Macco*, No. 17-CV-1218, 2018 WL 334032, at *2 (E.D.N.Y. Jan. 9, 2018).

### b. The Bankruptcy Court had subject matter jurisdiction to reopen the case

Appellants argue that the Bankruptcy Court lacked subject matter jurisdiction over the fee dispute. (Appellants' Br. 10–13.) In support, Appellants argue that "once confirmation occurs, the bankruptcy court's jurisdiction shrinks," (*id.* at 10 (quoting *In re Park Ave. Radiologists, P.C.*, 450 B.R. 461, 467 (Bankr. S.D.N.Y. 2011))), and post-confirmation jurisdiction is limited to matters where there is a "close nexus" to the Plan, which is not the case, (*id.* at 11–12). Appellants further argue that the fee dispute is a "non-core proceeding" because it has no impact on the Plan, and accordingly the Bankruptcy Court could not enter a final judgment because in non-core matters, bankruptcy courts may only enter final orders with the consent of the parties to the proceeding, which the Bankruptcy Court did not have.[2] (*Id.* at 12–13.)

---

[2] The parties also dispute whether the fee dispute was a core proceeding. Appellants argue that as a non-core proceeding, the Bankruptcy Court would only be permitted to "submit proposed findings of fact and conclusions of law" absent consent from the parties. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 671 (2015); (Appellants' Br. 12–13). Appellee contends that it was a core proceeding because the Bankruptcy Court's orders "affected the Escrow amount available for further distribution for [Von Lavrinoff]" and the adjudication "concerned the administration of the estate." (Appellee's Br. 21.) "[T]he distinction between core and non-core jurisdiction may not be particularly relevant after confirmation." *In re Gen. Media, Inc.*, 335 B.R. 66, 74 (Bankr. S.D.N.Y. 2005); *see In re Park Ave. Radiologists, P.C.*, 450 B.R. 461, 468 (Bankr. S.D.N.Y. 2011) ("Consequently, the [r]eorganized [d]ebtor's emphasis on whether this is a core or a non-core proceeding is misguided."); *id.* (reviewing whether the plaintiff established that the proceeding had a sufficiently close nexus to the plan and whether the relevant bankruptcy plan retained jurisdiction over post-effective date adversary proceedings); *see also In re Borko*, No. 12-CV-44373, 2013 WL 5442264, at *6 (Bankr. E.D.N.Y. Sept. 29, 2013) (holding that the bankruptcy court had core jurisdiction to interpret a will in order to determine a debtor's interest in real property pursuant to the will because "[d]etermining the scope of property falling within the bankruptcy estate is an essential part of administering the estate"); *In re Reliance Grp. Holdings, Inc.*, 273 B.R. 374, 392–95 (Bankr. E.D. Pa. 2002) (holding pre-petition state law action "request[ing] a determination of who owns or should control particular assets (i.e. cash and insurance proceeds)" to be a core proceeding); *All American Laundry Service v. Ascher (In re Ascher)*, 128 B.R. 639, 643 (Bankr. N.D. Ill. 1991) ("Thus, this Court has core jurisdiction to resolve the state law issues in the [r]emoved [c]ase since such resolution will determine whether [d]ebtor has an interest in property which, if such interest is found, will become property of the estate." (citations omitted)). Because this

Appellee argues that the Bankruptcy Court had jurisdiction to adjudicate the December 2020 Motion, and to enter the January 2021 Order and March 2021 Order, because the relief requested had a "close nexus" to the Plan and Confirmation Order and because the Plan expressly provided for the Bankruptcy Court's jurisdiction to enter the orders. (Appellee's Br. 16–21.) Appellee also contends that because the Bankruptcy Court's orders "affected the Escrow amount available for further distribution for [Von Lavrinoff]" and the adjudication concerned the administration of the estate, making the orders "core." (*Id.* at 21.)

"Confirmation of a Chapter 11 Plan does not divest the bankruptcy court of all jurisdiction." *Goodman v. Phillip R. Curtis Enters., Inc.*, 809 F.2d 228, 232 (4th Cir. 1987). A party can invoke the authority of the bankruptcy court to exercise post-confirmation jurisdiction if the matter has a "close nexus" to the bankruptcy plan and the plan provides for the retention of such jurisdiction. *In re DPH Holdings Corp.*, 437 B.R. 88, 97 (S.D.N.Y. 2010) ("A party asking a bankruptcy court to exercise post-confirmation jurisdiction must establish that (1) the matter has a 'close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan' and (2) that the plan 'provide[s] for the retention of jurisdiction over the dispute.'" (quoting *In re Gen. Media, Inc.*, 335 B.R. 66, 73–74 (Bankr. S.D.N.Y. 2005))), *aff'd*, 448 F. App'x 134, 137 (2d Cir. 2011); *see In re Park Ave. Radiologists*, 450 B.R. at 468 ("Well-settled case law establishes that as a consequence of the bankruptcy court's post-confirmation jurisdictional shrinkage, a party seeking to establish post-confirmation jurisdiction must satisfy two

---

proceeding for attorneys' fees, which would affect the Escrow, "could only arise in the context of a bankruptcy case," *In re Metro-Goldwyn-Mayer Studios Inc.*, 459 B.R. 550, 555 (S.D.N.Y. 2011) (quoting *In re Resorts Int'l, Inc.*, 372 F.3d 154, 162–62 (3rd Cir. 2004)), and the Bankruptcy Court's adjudication concerned the "administration of the estate," (Appellee's Br. 21 (quoting 28 U.S.C. § 157(b)(2)(A))), this constitutes a core proceeding.

11

requirements. 'First, the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan or incorporated litigation trust agreement. Second, the plan must provide for the retention of jurisdiction over the dispute.'" (quoting *In re Gen. Media, Inc.*, 335 B.R. at 73–74)); *In re Gen. Media*, 335 B.R. at 73–74 (collecting cases finding that post-confirmation authority must have a close nexus to the bankruptcy plan and the plan must provide for the retention of jurisdiction over the dispute).

### i. The relief requested has a close nexus to the Plan

There was a close nexus between the relief requested in the December 2020 Motion and the Plan.

There is a "close nexus" where the disputed issue would "impact the implementation, execution, and administration" of the bankruptcy plan. *In re DPH Holdings Corp.*, 448 F. App'x at 137; *see In re Indicon*, 499 B.R. 395, 401 (D. Conn. 2013) (quoting *In re DPH Holdings Corp.*, 448 F. App'x at 137); *In re Gen. Media, Inc.*, 335 B.R. at 73 (describing a "close nexus" as "when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan or incorporated litigation trust agreement" (quoting *In re Resorts International, Inc.*, 372 F.3d 154, 168–69 (3d Cir. 2004))). "Determining whether the 'close nexus' test has been satisfied is a fact sensitive endeavor." *In re New England Nat. LLC*, No. 11-CV-3058, 2012 WL 3987648, at *6 (D. Conn. 2012) (collecting cases)); *see In re Lightsquared, Inc.*, 539 B.R. 232, 242 (S.D.N.Y. 2015) (finding that the bankruptcy court had jurisdiction where injunction was sufficiently close to implementation and enforcement of the plan and where the bankruptcy court had "substantial background knowledge of this case," and noting that the decision to "cut any jurisdictional threads" should be left to the bankruptcy court

in the first instance).

The Plan provides that at the closing of the sale of the Property, Appellee would hold in the Escrow: (1) money for unpaid default interest; (2) estimated Mortgagee legal fees through June 26, 2020; (3) a legal fee reserve for future litigation by 1934 Bedford or successors against the Mortgagee; (4) a legal fee reserve for 1934 Bedford's objections to the Mortgagee's claim; and (5) an interest reserve through July 13, 2020. (R. 132.) In the December 2020 Motion, Appellee requested that the Bankruptcy Court disburse funds from the Escrow to pay post-effective date attorneys' fees and expenses. (Appellants' App. 58–59.) Because the amount sought by Appellee would be removed from the Escrow, from which Appellee was ordered to "release any [funds to the Mortgagee] upon an order of the [Bankruptcy] Court directing such funds' release," (R. 133), any amount would reduce the amount of the Escrow, which sufficiently affects the Plan, *see In re Park Ave. Radiologists*, 450 B.R. at 468 (finding that that a bankruptcy court has jurisdiction over a matter "when [it] affects the interpretation, implementation, consummation, execution or administration of the confirmed plan or incorporated litigation trust agreement"). Moreover, at the December 2020 Hearing, the Bankruptcy Court determined that it had the authority to reopen the case because "[t]here [was] clearly a dispute as to how to close out this [E]scrow." (Appellants' App. 284.) The March 2021 Order also acknowledged that Appellee could "only pay out such funds upon order of [the Bankruptcy] Court or another court of competent jurisdiction." (*Id.* at 415.) The Bankruptcy Court, in ordering the fees, "circle[d] back . . . to the [P]lan" and "interpret[ed] the [P]lan" and Confirmation Order, further indicating that the fee dispute had a "close nexus" to the Plan. (*Id.* at 406); *see In re Gen. Media, Inc.*, 335 B.R. at 73 (finding a close nexus where a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan); *see also Advantage*

13

*Healthplan, Inc. v. Potter*, 391 B.R. 521, 545–47 (D.C. Cir. 2008) (finding that the bankruptcy court had jurisdiction over a dispute for attorneys' fees and that there was a "close nexus" between the plan and the dispute because the bankruptcy court needed to interpret the [p]lan, and there was also a "potential effect on the administration of the confirmed [p]lan").

Accordingly, the Court finds that the action has a "close nexus" to the bankruptcy proceeding.

### ii. The Plan provides for retention of jurisdiction

The Plan provides for the Bankruptcy Court to retain jurisdiction.

"Where . . . the [p]lan provides for the retention of jurisdiction, and those provisions are incorporated into a confirmation order, the bankruptcy court has broad authority to enforce the terms of the plan." *Weigel v. Barnard*, --- B.R. ---, ---, 2021 WL 3793794, at *6 (E.D.N.Y. Aug. 21, 2021); *see In re Gen. Growth Props., Inc.*, 460 B.R. 592, 600–01 (Bankr. S.D.N.Y. 2011) (finding that the bankruptcy court had jurisdiction where the plan provided that the court would have "exclusive jurisdiction of all matters arising out of, or related to, the Chapter 11 Cases, the [p]lan and implementation of the [p]lan"); *In re Richard J.F. Navin*, 382 B.R. 6, 15–16 (E.D.N.Y. 2007) (finding it "beyond question" that the bankruptcy court exercised its jurisdiction appropriately where the plan provided the bankruptcy court with jurisdiction to "hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement or implementation of the plan").

The Bankruptcy Court, through the Plan and the accompanying Confirmation Order, retained broad, sweeping jurisdiction "over all matters arising under, arising in, or relating to [1934 Bedford's] [b]ankruptcy [c]ase including, but not limited to" a number of enumerated

proceedings, including "all requests for compensation and/or reimbursement of expenses which may be made." (R. 144–45.) Thus, the Bankruptcy Court had jurisdiction over the fee dispute.

    **c.  The Bankruptcy Court did not abuse its discretion in approving Appellee's fee application**

Appellants contend that the Bankruptcy Court erred by failing to address and apply the standard "lodestar" calculation for reviewing fee requests in this Circuit. (Appellants' Br. 17–20.) In support, Appellants argue that by not addressing the "rates charged by [Appellee] and compar[ing] them to the normal and customary rates in the Eastern District of New York," the Bankruptcy Court took a position that "is inconsistent with the prevailing law in the Second Circuit." (*Id.* at 18.) Appellants further argue that the Bankruptcy Court "hardly, if at all," addressed Appellee's time records, and at best, disallowed some duplicative entries. (*Id.* at 19.)

Appellee argues that the Bankruptcy Court "did not abuse its discretion in granting certain of [Appellee's] fees," because it reviewed "substantial evidence," made reductions to the fees requested to determine the number of hours it deemed appropriate for the work Appellee completed, and then applied the law of the case to apply hourly rates agreed to by Appellants. (Appellee's Br. 28–32.)

A bankruptcy court's award of attorneys' fees is reviewed for abuse of discretion. *See In re TPG Troy, LLC*, 793 F.3d 228, 235 (2d Cir. 2015) ("The bankruptcy court did not abuse its discretion in awarding [attorneys'] fees here."); *In re Emanuel*, 460 F. App'x 48, 50 (2d Cir. 2012) ("We review the bankruptcy court's denial of attorney's fees for abuse of discretion." (citing *In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000))); *In re Bayshore Wire Prods. Corp.*, 209 F.3d at 103 ("Like the [d]istrict [c]ourt, we review the [b]ankruptcy [c]ourt's . . . decision to award costs, attorney's fees, and damages for abuse of discretion." (citing *Susman v. Schmid (In re Reid)*, 854. F.2d 156, 159 (7th Cir. 1988))); *Worms v. Rozhkov*,

15

No. 20-CV-6422, 2021 WL 4124662, at *2 (S.D.N.Y. Sept. 9, 2021) ("A court's decision granting or denying an award of attorney's fees is reviewed for abuse of discretion." (citing *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 104 (2d Cir. 2016))). Bankruptcy courts are afforded discretion in determining what constitutes reasonable sanctions and attorneys' fees. *In re Crowder*, No. 16-CV-20440, 2016 WL 3453214, at *4 (Bankr. W.D.N.Y. June 16, 2016) (exercising "discretion in denying an award of attorneys' fees and sanctions . . . under [section] 362(k)(1)"). In exercising discretion, bankruptcy courts consider the complexity of the action and the time, labor, and skill employed in defending the action. *See Collum v. E. Ala. Med. Ctr. (In re Collum)*, 604 B.R. 61, 70 (Bankr. M.D. Ala. 2019) (noting that bankruptcy courts consider the "time spent on services, rates charged, the importance and nature of the issue, and whether the services were necessary" in determining an award for attorneys' fees (citing *In re Smith*, 296 B.R. 46, 62 (Bankr. M.D. Ala. 2003))). The inquiry on appeal of a bankruptcy court's order awarding fees "is focused on 'whether there is a reasonable basis in the record to support the propriety of the bankruptcy judge's decision,' not on whether 'the appellate court might have ruled differently if presented with the same evidence.'" *Bernheim*, 2007 WL 1858292, at *1 (quoting *In re JLM, Inc.*, 210 B.R. at 23); *see Livecchi v. Gordon*, 544 B.R. 57, 61 (W.D.N.Y. 2015) ("The reason for according the bankruptcy court such broad discretion in matters concerning compensation is that the bankruptcy court is more familiar with the actual services performed and has a far better means of knowing what is just and reasonable than an appellate court can have." (quoting *Matter of Shades of Beauty, Inc.*, 95 B.R. 17, 18 (E.D.N.Y. 1988))).

The Second Circuit has generally held that "the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (first

16

quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2007); and then citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551–53 (2010)). However, while "[t]he customary method for assessing an attorney's fee application in bankruptcy is the 'lodestar,' under which 'the number of hours reasonably expended' is multiplied by 'a reasonable hourly rate' for the person providing the services," "the lodestar method is not mandatory." *In re Eliapo*, 468 F.3d 592, 597–98 (9th Cir. 2006) (citations omitted); *see Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 959 (9th Cir. 1991) (finding that in Chapter 11 case, while "starting with the 'lodestar' is customary, it does not mandate such an approach in all cases").

The Bankruptcy Court did not abuse its discretion in ordering attorneys' fees in the amount ordered. At the February 2021 Hearing, the Bankruptcy Court stated on the record that it "went through [Appellee's] very detailed chart where each time entry is defended," went through "the pleadings and . . . made certain reductions to the fees requests and expenses requested," including a concession from Appellee, and noted entries that the Bankruptcy Court thought "duplicative" or not prudent. (Appellants' App. 399–401.) The Bankruptcy Court also reduced the requested post-effective date fees for "time related to the defense of the fee application." (*Id.* at 401–02, 404.) Accordingly, the Bankruptcy Court took care to "carefully and independently review[] the attorney time and expense reports to ensure that they were reasonable and commensurate with the tasks undertaken." *In re Hoti Enters.*, 605 F. App'x 67, 68 (2d Cir. 2015); *see In re Polanco*, 626 B.R. 12, 23 (Bankr. E.D.N.Y. 2021) ("As the Second Circuit has also observed, it may be necessary to 'carefully and independently review[] the attorney time and expense reports to ensure that they were reasonable and commensurate with the tasks undertaken.'" (quoting *In re Hoti Enters.*, 605 App'x at 68)). The Bankruptcy Court declined to

17

alter the hourly rates set forth in the parties' Agreement, and instead relied on the fact that 1934 Bedford had acknowledged that Appellee would bill at its customary hourly rates per the Agreement, "which, with respect to the professionals expected to work on this matter [were] $675–$1,200 for partners, $485–$770 for associates, and $260–$440 for paralegals." (R. 76). In their Agreement with Appellee, Appellants affirmed that the fees were "appropriate, fair and reasonable." (R. 76.) The Bankruptcy Court deducted $6,354 for duplicative time or imprudent time and $43,407 for fees related to the fee application, for a total of $50,098.50 in disallowed fees, (Appellants' App. 402), based on its first-hand opportunities to evaluate Appellee during proceedings and hearings, its experience with the central issues of the case, and its general expertise in bankruptcy proceedings, *see Bernheim*, 2007 WL 1858292, at *2 (deferring to bankruptcy judge's determination of fees when the bankruptcy judge "presided over th[e] bankruptcy . . . and had the opportunity to evaluate first-hand both the quality of [the appellee's] performance and the contributions made by the firm" (citing *New York, N.H. & H.R. Co. v. Iannotti*, 567 F.2d 166, 179 (2d Cir. 1977))). Thus, there is a reasonable basis in the record to support the Bankruptcy Court's decision. *See id.* at *1 (ruling that appellate decisions regarding attorneys' fees is focused on "whether there is a reasonable basis in the record to support the propriety of the bankruptcy judge's decision" (quoting *In re JLM, Inc.*, 210 B.R. at 23)). Further, based on the facts before the Court, the fact that the Bankruptcy Court did not conduct a lodestar calculation does not require remand of this action.[3]

---

[3] The case law relied on by Appellants to argue that the Bankruptcy Court's decision is erroneous because it failed to use the lodestar calculation is unpersuasive. In *Castcapa Constr., LLC v. TMB Servs. Ltd. Liab. Co.*, No. 17-CV-1023, 2018 WL 623546 (E.D.N.Y. Jan. 30, 2018), an opposing party was forced to contractually indemnify plaintiff for "reasonable attorneys' fees." *Castcapa*, 2018 WL 623546, at *2. The district court found the magistrate judge's report and recommendation was clearly erroneous because "it did not, on the face of the opinion, make

18

Accordingly, the Court finds that the Bankruptcy Court did not abuse its discretion in ordering attorneys' fees in the amount that it did.[4]

---

any findings as to the reasonableness of the fee awarded to [the plaintiff's] counsel," and the district court determined that the reasonable hourly rate was "what a reasonable, paying client would be willing to pay." *Id.* The Bankruptcy Court excluded hours that it found "excessive, redundant, or otherwise unnecessary," as the district court did in *Castcapa*. *Castcapa*, 2018 WL 623546, at *4 (quoting *Guaman v. J&C Top Fashion, Inc.*, No. 14-CV-8143, 2016 WL 791230, at *8 (S.D.N.Y. Feb. 22, 2016)). Despite not using the lodestar calculation, the Bankruptcy Court determined a reasonable fee amount and did not abuse its discretion in doing so. *See In re Tribeca Mkt., LLC*, 516 B.R. 254, 274 (S.D.N.Y. 2014) ("Regardless of whether the Bankruptcy Court applied the lodestar figure, the result achieved here would be 'reasonable.'").

[4] Appellants also argue in their reply papers that an evidentiary hearing is necessary. (*See* Appellants' Reply 9 ("Moreover, as Appellants' lodestar arguments were grounded in part upon factual disputes (i.e. it could not take hours to prepare a pro-forma affidavit of service), it was improper to adjudicate the issue without an evidentiary hearing.").) Because Appellants raise this argument for the first time in their reply papers, the Court declines to consider it. *See United States v. Canada*, 858 F. App'x 436, 441 n.3 (2d Cir. 2021) ("We generally treat arguments raised for the first time in a reply brief as waived." (quoting *United States v. George*, 779 F.3d 113, 119 (2d Cir. 2015))); *Jericho Grp. Ltd. v. Mid-Town Dev. Ltd. P'ship*, 816 F. App'x 559, 564 (2d Cir. 2020) (citing *JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. v. C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) (explaining that courts generally do not consider arguments raised for the first time in reply briefs); *Aviva Trucking Special Lines v. Ashe*, 400 F. Supp. 3d 76, 80 (S.D.N.Y. 2019) ("Generally, 'a court should not consider arguments that are raised for the first time in a reply brief.'" (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 n.5 (2d Cir. 2006) (Sotomayor, J.))).

Appellants also argue that (1) 1934 Bedford is the proper owner of the Escrow, (2) Appellee breached professional ethics by keeping the Escrow "hostage," (3) Appellee converted the Escrow, and (4) New York law applies. (Appellants' Br. 13–17.) However, because Appellants only presented two questions on appeal, namely, whether the Bankruptcy Court erred by exercising jurisdiction over the fee dispute, and whether the Bankruptcy Court erred by failing to address and apply the "lodestar" factors, (*id.* at 2), and do not respond to Appellee's argument that Appellants' "remaining arguments regarding the Escrow are unavailing and beyond the scope of the issues presented," (Appellee's Br. 22), the Court declines to consider these additional arguments.

### III.  Conclusion

For the foregoing reasons, the Court affirms the Bankruptcy Court's orders.  The Clerk of Court is directed to enter judgment and close the case.

Dated: March 31, 2022
      Brooklyn, New York

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge